UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

BAKHOSHEQ ALLAN,

                                    Plaintiff,

          vs.                                                    9:05-CV-1280
                                                                 (NAM/GJD)
R.K. WOODS, Superintendent,
et al.,

                                    Defendants.
_____

BAKHOSHEQ ALLAN, Plaintiff pro se
CHARLES J. QUACKENBUSH, Asst. Attorney General
          for Defendants

GUSTAVE J. DI BIANCO, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

     This matter has been referred to the undersigned for Report and

Recommendation by the Honorable Norman A. Mordue, Chief United States District

Judge, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

     In this civil rights complaint, plaintiff alleges that defendants have violated his

First Amendment right to freely practice his religion as well as his rights under the

Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc

*et seq*. (Dkt. No. 1).  Plaintiff seeks substantial monetary relief.

     Presently before the court is defendants' motion for judgment on the pleadings

pursuant to FED. R. CIV. P.12(c). (Dkt. No. 23).  Plaintiff has responded in opposition

to defendants' motion. (Dkt. No. 26).  Plaintiff has also made a motion to supplement

his complaint pursuant to FED. R. CIV. P. 15(d), and defendants have opposed that

motion. (Dkt. Nos. 28, 29).  For the following reasons, this court finds that defendants' motion for judgment on the pleadings should be granted and the complaint dismissed.  Plaintiff's motion to supplement should be denied without prejudice to plaintiff filing an amended complaint.

## DISCUSSION

### 1.   <u>Motion for Judgment on the Pleadings</u>

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted). *See* FED. R. CIV. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion under Rule 12(b)(6). *Id*.

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or

incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998). In this case, plaintiff has attached as exhibits to the complaint, his facility grievance, together with the appeals of that grievance. This court may, therefore, consider the facts contained in those exhibits.

## 2.    Facts

Plaintiff alleges that he arrived at Upstate Correctional Facility on September 17, 2004 and was assigned to a work program in the mess hall beginning on September 27, 2004. Complaint at p.2(a).4. Plaintiff alleges that he told defendants Forton, Hutchins, and Haug[1] that he could not work on Fridays and Saturdays because he was a Hebrew Israelite. Plaintiff states that defendants Forton and Hutchins were his supervisors, and that defendant Haug was the Food Service Administrator at Upstate Correctional Facility. *Id.* Plaintiff states that because his religion prevented him from working on Fridays and Saturdays, he offered to work on other days that he was not originally scheduled to work. *Id.*

Plaintiff alleges that defendants Hutchins and Forton told plaintiff that accommodating his religious beliefs would not be a problem, however, plaintiff claims that these defendants later went back on their word. Plaintiff's complaint is not very clear after this point, but it appears that plaintiff states that on September 30, 2004, defendants Forton and Hutchins informed plaintiff that he would only have to work a half-day on October 1, 2004 so that he could prepare for the Sabbath at sundown.

---

[1] Plaintiff refers to this defendant as "Hoag," however, the proper spelling is Haug, and the court will refer to this defendant with the proper spelling of his name.

However, plaintiff states that on October 1, 2004, defendant Forton "reneged his agreement."

Plaintiff states that he asked to speak to a sergeant.[2]  Plaintiff alleges that he spoke to defendant King, who told plaintiff that the facility had no knowledge of his particular religion, and ordered plaintiff to work on his Sabbath or be "ticketed." Plaintiff states that due to this threat, he came to work on October 1, 2004.  Plaintiff states that working on the Sabbath caused so much stress for plaintiff that he was unable to concentrate on his work and was injured on the job.  Plaintiff states that he was sent to the infirmary, and his injury is "documented."

Plaintiff also states that on the evening of October 1, 2004, he wrote to Superintendent R.K. Woods, who referred plaintiff to Reverend Hawk.  Reverend Hawk advised plaintiff to file a grievance regarding this problem.  Plaintiff filed a grievance, and he states that, as a result of the grievance, he was contacted by defendant Superintendent Woods, who informed plaintiff that his religion was ***not*** recognized by the Department of Correctional Services (DOCS).  Plaintiff states that shortly thereafter, he was informed that, contrary to the superintendent's statement, plaintiff's religion ***was recognized*** by DOCS.  Plaintiff alleges that as a result of filing this lawsuit, he has been continually harassed by "various officers" at Upstate.

Plaintiff lists three causes of action in the complaint:

_____

[2] It is unclear from the complaint when plaintiff spoke to Sergeant King, but it appears that he spoke to defendant King on September 30, 2004 because plaintiff then states that due to defendant King's alleged "threats," plaintiff came to work on the Sabbath.  Since plaintiff claims that the Sabbath was October 1, 2004, the court assumes that plaintiff spoke to King the day before.

4

1.    Defendants have violated plaintiff's rights under the Religious Land Use
and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc.

2.    Plaintiff's first amendment and due process rights were violated when
defendants "forced" plaintiff to work on the Sabbath.

Plaintiff lists a third cause of action, but it does not appear to be a separate claim.  He
appears to claim that his rights have been violated because Upstate Correctional
Facility[3] does not have a specific "directive" regarding the Hebrew Israelite religion,
and that the facility "policy" was the "moving force" behind the violation of plaintiff's
rights.  It is unclear what plaintiff means by the facility "policy," but plaintiff might be
attempting to claim that the *lack* of a specific provision in the DOCS Directives for
Hebrew Israelites violates plaintiff's First Amendment rights.  Plaintiff thus appears to
have a cause of action under RLUIPA and a section 1983 claim for First Amendment
violations.

**3.    RLUIPA Cause of Action**

On September 22, 2000, President Clinton signed RLUIPA into law. 42 U.S.C.
§ 2000cc *et seq.*  Section 3 of RLUIPA provides that government action that
"substantially burden[s]" religious exercise must be justified as the "least restrictive
means" of furthering a "compelling governmental interest." 42 U.S.C. §§ 2000cc

---

[3] The court does note that plaintiff had originally named Upstate Correctional Facility as a
defendant, but on November 3, 2005, Chief Judge Mordue dismissed Upstate as a defendant based
upon Eleventh Amendment immunity.  To the extent that plaintiff states that there is a "policy," this
allegation may only be used to support a claim of personal involvement by a supervisory defendant in
his individual capacity. *See Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)(a supervisory
official may be personally involved in a constitutional violation if he or she created a policy or
custom under which unconstitutional practices occurred or allowed such a policy or custom to
continue).

(a)(1), 2000cc-1(a).  RLUIPA was enacted after the Supreme Court declared the

Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb *et seq.*,

unconstitutional as applied to state law. *See City of Boerne v. Flores*, 521 U.S. 507

(1997).

The general rules of both the statutes are similar, but the application of RLUIPA

is narrower in breadth than RFRA. *Young v. Goord*, 01-CV-626, 2005 U.S. Dist.

LEXIS 3641, *15 (E.D.N.Y. March 10, 2005).  RLUIPA creates a private right of

action for violations of section 3. 42 U.S.C. § 2000cc-2(a).  *See Salahuddin v. Goord*,

467 F.3d 263, 273-74 (2d Cir. 2006).  Under RLUIPA, plaintiff bears the burden of

showing that the activity is a religious exercise, and that defendants have substantially

burdened that exercise. 42 U.S.C. § 2000cc-1.  "Religious exercise" under RLUIPA

includes "any exercise of religion, whether or not compelled by, or central to, a system

of religious belief."[4] *Salahuddin*, 467 F.3d at 274 n.1 (citing 42 U.S.C. § 2000cc-

5(7)(a)).

The term "substantial burden" was not defined in the statute.  However, the

Supreme Court stated in a non-prisoner case in which an individual was denied

unemployment benefits when he terminated his employment because his religion

forbade him from participating in the production of weapons, that a "substantial

burden" occurs when the state "puts substantial pressure on an adherent to modify his

behavior and to violate his beliefs." *Thomas v. Review Bd. of Ind. Employment Sec.*

---

[4] This differs from RFRA in which the "religious exercise" had to be a "central tenet" of the
religion. *See Spratt v. Wall*, No. 04-112, 2005 U.S. Dist. LEXIS 33266, *8-9 (D.R.I. Nov. 21, 2005)
(Senior U.S.M.J. Jacob Hagopian), *adopted by*, 2006 U.S. Dist. LEXIS 37254 (D.R.I. June 5, 2006).

*Div.*, 450 U.S. 707, 717-18 (1981). In *McEachin v. McGuinnes*, the Second Circuit used the same standard when determining that there was a "substantial burden" under the First Amendment. *McEachin v. McGuinnes*, 357 F.3d 197, 202 n.4 (2d Cir. 2004)(quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)). Other courts have used this standard for cases brought pursuant to RLUIPA. *See Spratt v. Wall*, No. 04-112, 2005 U.S. Dist. LEXIS 33266, *9-13 (D.R.I. Nov. 21, 2005)(Senior U.S.M.J. Jacob Hagopian), *adopted by*, 2006 U.S. Dist. LEXIS 37254 (D.R.I. June 5, 2006).

The court would point out that the "substantial burden" test, whether under RLUIPA or under the First Amendment does ***not*** require that the court decide whether the burdened practice is "mandated" since this would require the court to distinguish important from unimportant beliefs, "a task for which ... courts are particularly ill suited ... ." *Ford v. McGuinnes*, 352 F.3d 582, 592-93 (2d Cir. 2003).

In this case, plaintiff states that his religion prevents him from working on the Sabbath, which includes sundown on Friday until sundown on Saturday. Complaint at p.2(a)4 (and following page).[5] This court will assume that plaintiff's belief ***is sincerely held***, ***and*** that forcing plaintiff to work on a Sabbath ***would "substantially burden" the exercise of his religion***. As stated in *Cutter v. Wilkinson*, the truth of a belief is not questioned, the question is whether the belief is truly held. 544 U.S. at 725 n.3.

Notwithstanding the fact that in this case, plaintiff's belief may be truly held, plaintiff has not alleged that his religious practice was substantially burdened.

---

[5] There is an unnumbered page between pages (2)(a)4 and 2(a)5.

7

Plaintiff states that he was initially told that he would not have to work on his Sabbath. Plaintiff states that on September 30, 2004, defendants Forton and Hutchins told plaintiff that he would only have to work one half day on October 1, 2004 so that he could prepare for the Sabbath at sundown, but then defendant Forton reneged on his agreement. Defendant Haug, the Food Service Administrator, allegedly also told plaintiff that if Haug had to work on Sundays, then plaintiff would have to work on his Sabbath. Plaintiff states that he asked to speak to a sergeant, and that defendant Sergeant King told plaintiff that there was an "absence of knowledge as to [his] way of life", that he was giving plaintiff a direct order to come to work, and if plaintiff did not come to work on the Sabbath, he would be "keep-locked and ticketed." Complaint at p.(2)(a)4 and following page.

Plaintiff states that due to the "threatening" nature of Sergeant King's statement, plaintiff came to work on his Sabbath, violating the laws of the Torah. Plaintiff claims that he was so distraught that he could not focus on his work, and ultimately was injured on the job. Plaintiff states that he was sent to the infirmary, and that on the evening of October 1, 2004, he wrote to Reverend Hawk, who told plaintiff to file a grievance regarding this issue. Plaintiff has included copies of the grievance and the appeals of his grievance as exhibits to the complaint.

A review of all the complaint and all the documents attached show that plaintiff never worked on the Sabbath at all. Plaintiff went to work on October 1, 2004, but plaintiff, himself stated that the Sabbath would not start until sundown on that date. Then plaintiff states that he was so upset that he would have to work on the Sabbath,

8

that he injured himself and had to be taken to the infirmary.  Plaintiff never actually alleges that he was forced to work on the evening of October 1, 2004.

Plaintiff filed a grievance, and on October 15, 2004, the Inmate Grievance Resolution Committee (IGRC) stated that even though the Upstate Clergy were not aware that an individual of the Hebrew Israelite religion was not supposed to work on Fridays and Saturdays, the Food Service Administrator (defendant Haug) stated that effective October 4, 2004, plaintiff would have Fridays and Saturdays off. Exhibit to Complaint at p.2.  Plaintiff was also told that he must show proof that his religion was valid and that he was not allowed to work on Fridays or Saturdays. *Id.*

Plaintiff appealed the determination of the IGRC, and on October 20, 2004, the Superintendent held that the Hebrew Israelite practice was not officially recognized by the Department of Correctional Services, so it was plaintiff's responsibility to provide documentation regarding the practices of the religion. Complaint Exhibit at p.4. However, plaintiff was still given Fridays and Saturdays off.  The Central Office Review Committee (CORC) held that plaintiff's grievance was accepted in part.  The CORC simply stated that the issue "has the attention of the facility administration." *Id.* Exhibit at p.6.

Although plaintiff was told that he had to provide documentation to substantiate his request, the accommodation was made notwithstanding the absence of this information.  Plaintiff never actually worked on a Sabbath and was never disciplined for not doing so.  There was no substantial burden on plaintiff's exercise of his religion because plaintiff never had to work during a prohibited time.  The

9

accommodation was made for plaintiff even ***before*** he provided the required documentation.  In *Cutter*, the Supreme Court stated that RLUIPA does not preclude inquiry into the sincerity of a prisoner's professed religiosity. 544 U.S. at 725 n.13.

Plaintiff has not shown that defendants substantially burdened the exercise of his religion, and in the alternative, assuming that what happened could have been considered a burden of any kind, the Supreme Court has made clear that it is not a violation of the statute to inquire into the sincerity of the plaintiff's beliefs.  Thus, asking plaintiff to produce some sort of documentation, ***while still allowing him his accommodation***, is the least restrictive method of furthering the government's interest in making sure that the inmate's beliefs are truly held.  Thus, plaintiff does not state a claim under RLUIPA.

4.      **First Amendment (section 1983 Cause of Action)**

Inmates do have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)(citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990).  The analysis of a free exercise claim is still governed by the framework set forth in *O'lone v. Estate of Shabazz*, 482 U.S.342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987).

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89).  An

10

individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d at 274 n.4 (citations omitted).  As in claims under RLUIPA, the inmate must first show that the challenged conduct substantially burdens his religious beliefs, and then the defendants must identify the legitimate penological interest that justifies their impinging conduct. *Id.* at 274-75.

Once again, it is clear that plaintiff ***never*** was forced to work on the Sabbath. At worst, he began working during the day when the Sabbath began at sundown. However, he was injured on the job, and went to the infirmary.  He was subsequently granted the accommodation even though he had not yet produced the requested documentation.[6]  The Supreme Court has held that prison officials may inquire into the sincerity of the inmate's beliefs. *Cutter*, 544 U.S. at 725 n.13.  If the prison officials are unfamiliar with plaintiff's religion, it is reasonable to inquire into the sincerity of plaintiff's beliefs by asking for some type of documentation.  In any event, it is clear that plaintiff was allowed to exercise his religious belief even without the documentation.  Plaintiff does not allege that he was ever asked or "forced" to work on the Sabbath again.

Plaintiff seems to allege that the fact that he was supposed to work on the

---

[6] It appears from the grievance papers that plaintiff's employer, defendant Haug, the Food Service Administrator, granted plaintiff the accommodation even without the required documentation. Attachment to Complaint at p.2.  The response of the IGRC reads "***[p]er Food Service Administrator***, effective 10/4/04 grievant has Friday and Saturdays off." (emphasis added).

Sabbath was actionable, however, it is clear that even assuming that his "fear" of working on the Sabbath was a burden on the exercise of his religious belief, this is the type of de minimis burden that is not of constitutional dimension. *See Ford v. McGinnes*, 352 F.3d at 594 n.12.  While forcing someone to work on their Sabbath would be a substantial burden, the "fear" of having to work on the Sabbath, when plaintiff was never forced to do so can be characterized as a de minimis burden.

In his response to defendants' motion for judgment on the pleadings, plaintiff, *for the first time* states that he was going to be forced to work on October 2, 2004, which was a Saturday. (Dkt. No. 26, ¶ 3).  This is *completely at odds with what he alleges in his complaint*.  In the complaint, he states that the discussion of the Sabbath occurred on September 30, 2004, and that plaintiff was told that he was only going to have to work a half-day on October 1, 2004, and then was injured so he never worked in the evening of October 1, 2004.  Because plaintiff's new allegations are so completely at odds with what plaintiff initially alleged, and with the appeal documents that plaintiff attached to his complaint, this court still finds that whatever burden was placed on plaintiff's rights, that burden was de minimis.  Thus, plaintiff does not state a First Amendment claim in this case.

5.   **Supplemental Complaint**

Plaintiff has also filed a motion to "supplement" his complaint. (Dkt. No. 28).  In his motion, plaintiff alleges that he wishes to serve a supplemental pleading "setting forth certain events that have occurred since the filing of the original complaint." (Dkt. No. 28 at numbered p.1).  Plaintiff includes an affidavit with his motion,

12

discussing the additional defendants and stating that "subsequent to the filing of plaintiff's original pleading, plaintiff has been subjected to constant harassment and cruel and unusual punishment." Plaintiff's Affidavit ¶ 2.  The court does note that in the complaint, plaintiff did allege that he was being "continually harassed" by "various officers" since those involved heard that plaintiff was filing this complaint. In the complaint, plaintiff did not specify what officers were harassing him or what the harassment was.

FED. R. CIV. P. 15(d) allows a party to supplement a pleading with matters that occurred ***after the filing of the original complaint***, but pertain to the original pleading. *Albrecht v. Long Island Rail Road*, 134 F.R.D. 40, 41 (E.D.N.Y. 1991).  A party may supplement to include subsequent occurrences "absent prejudice to the nonmoving party." *Id.*  The court may grant a motion to supplement even though the original pleading is defective in its statement of a claim. FED. R. CIV. P. 15(d).

The standard for a motion to supplement is the same as for a motion to amend the pleadings under Rule 15(a). *Klos v. Haskell*, 835 F. Supp. 710, 715 (W.D.N.Y. 1993)(Fisher, M.J.), *adopted by* 835 F. Supp. at 713 (W.D.N.Y. 1993)(Telesca, D.J.). Generally, the court has discretion whether or not to grant leave to amend [a pleading]. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, in exercising this discretion, the court must act pursuant to Fed. R. Civ. P. 15(a), granting leave to amend "freely ... when justice so requires." Fed. R. Civ. P. 15(a); *Id*. at 182.

In deciding whether to exercise its discretion, the court must examine whether there has been undue delay, bad faith, or dilatory motive on the part of the moving

13

party. *Evans v. Syracuse City School District*, 704 F.2d 44, 46 (2d Cir. 1983) (citing *Foman*, 371 U.S. at 182). The court must also examine whether there will be prejudice to the opposing party. *Kovian v. Fulton County National Bank*, 86-CV-154, 1992 U.S. Dist. LEXIS 7023 (N.D.N.Y. May 13, 1992). Finally, where it appears that granting leave to amend is unlikely to be productive or the amendment is futile, it is not an abuse of discretion to deny leave to amend. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)(citations omitted).

Although plaintiff in this case does cite Rule 15(d) and calls his submission a "motion to supplement", some of the events listed in plaintiff's affidavit did ***not occur subsequent to the filing of the original complaint***. Plaintiff filed this complaint on October 7, ***2005***. (Dkt. No. 1). The complaint was signed on September 8, ***2005***. In his motion to supplement, plaintiff alleges that "[o]n October 27, ***2004***, C.O. Falcon subjected plaintiff to cruel and unusual punishment, in violation of the Eight Amendment, in a course of retaliatory conduct." Plaintiff's Aff. ¶ 2 (emphasis added). Plaintiff also alleges that on ***January 1, 2005***, C.O. J. McGaw "subjected plaintiff to cruel and unusual punishment, in violation of the Eighth Amendment, in a course of retaliatory conduct." *Id.* (emphasis added). The events that plaintiff alleges are subsequent to his filing this complaint begin on February 16, 2006 and continue through February and March of 2006.

To the extent that plaintiff alleges actions that occurred prior to his filing the complaint, plaintiff's motion is one to amend the complaint, and to the extent that plaintiff alleges actions occurring subsequent to the filing of this complaint, the

motion is one to supplement.

The first problem with plaintiff's motion is that he has not submitted a proposed supplemental or amended complaint, although he states in his motion that he has attached a supplemental complaint as Exhibit A.  There is no Exhibit A attached to the motion, only plaintiff's affidavit outlining the new claims.  Plaintiff is required to submit a proposed supplemental pleading, separate from the original pleading, and restricted to transactions or occurrences that happened since the date of the original pleading. LOCAL RULE N.D.N.Y. 7.1(a)(4).  For an amended complaint, plaintiff is required to submit a proposed amended pleading that ***supercedes*** the original. *Id.* Plaintiff in this case has done neither, and has combined supplemental issues with amended claims. Thus, plaintiff's motion may be denied on this basis alone.

### 6.   **Dismissal**

Where a plaintiff is proceeding pro se, the court must interpret the pleadings liberally "to raise the strongest arguments they suggest." *Bussey v. Phillips*, 419 F. Supp. 2d 569, 579 (S.D.N.Y. 2006)(quoting *Graham v. Henderson* 89 F.3d 75, 79 (2d Cir. 1996)(internal quotation marks omitted).  A court should not dismiss without granting leave to amend at least once when the complaint gives any indication that a valid claim may be stated. *See Gomez v. USAA Fed. Savings Bank*, 171 F.3d 794, 795-96 (2d Cir. 1999)(citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)).

Although this court finds in this case, that plaintiff's original complaint has not stated a claim under either RLUIPA or under the First Amendment, plaintiff's response to the motion and his motion to supplement/amend the complaint may be

attempting to allege some sort of retaliation either for complaining about the religious issue or for filing this suit.  It is extremely unclear, however, due to the inconsistency between the original complaint and the response to defendants' motion.

Retaliation for the exercise of a constitutional right is a separate claim from the plaintiff's substantive First Amendment or statutory RLUIPA claim. *See Graham v. Henderson*, 89 F.2d 75, 79 (2d Cir. 1996).  Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988).  In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiff must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

In this case, plaintiff's original complaint stated that he was being continually harassed by unnamed individuals since the defendants "heard" that plaintiff was filing suit.  The original complaint did not name any defendants that were responsible for this alleged retaliation, did not state what actions by particular individuals constituted retaliation, and how plaintiff knew that the alleged actions were motivated by

16

retaliation for a law suit that they appear to have only "heard" plaintiff was filing. Clearly, the original complaint as written does not state a claim for retaliation.

Plaintiff's motion to supplement now names individuals who he claims retaliated against plaintiff on various occasions, before and after the filing of this law suit. As stated above, no proposed pleading was included in the motion. The court would also point out that plaintiff's affidavit in support of the motion lists many dates upon which now-named individuals "retaliated" against plaintiff. These factual statements appear to simply be a list of allegedly adverse actions taken by previously unidentified individuals that plaintiff alleges were taken "in a course of retaliatory conduct." Plaintiff is reminded that **conclusory allegations of retaliation are insufficient**. *Graham*, 89 F.3d at 79. Plaintiff could claim retaliation for every action that he did not like or that he perceived was adverse to him.

Because plaintiff is pro se, and defendants' motion was based on the pleadings alone, this court will recommend dismissal without prejudice to plaintiff filing an amended complaint including all the claims he wishes to raise and all defendants he wishes to name. Plaintiff is cautioned, however, that his original complaint does **not state a claim under RLUIPA or the First Amendment**. Plaintiff's response to the motion for judgment on the pleadings implied that the facts might be different than as he first stated in his complaint. Plaintiff's original complaint does not indicate that plaintiff was ever forced to work during the Sabbath, and that an accommodation was made shortly after he complained.

Plaintiff's response changes the dates of his claims and appears to state that he

was forced to work on the Sabbath on one or more occasions.  If plaintiff attempts to amend his religious claims, he must keep in mind that he must show that his right to practice his religion was "substantially burdened," and that defendants' response was not the least restrictive method of dealing with a compelling state interest (RLUIPA) or was not reasonably related to a legitimate penological interest (First Amendment).

   If plaintiff chooses to amend his complaint to state a retaliation claim, he must remember that he must show, not only that his conduct was constitutionally protected, but that defendants' adverse actions were motivated by his protected conduct.  He may not simply claim in a conclusory fashion that all the allegedly adverse actions were motivated by "a course of retaliatory conduct."  Thus, this court is recommending dismissal of the original complaint and denial of the motion to supplement without prejudice to plaintiff submitting a proposed amended complaint for the court's review that will supercede the original and will contain all claims that plaintiff now wishes to bring and all defendants that he now wishes to name.

   **WHEREFORE**, based on the findings above, it is

   **RECOMMENDED**, that defendants' motion for judgment on the pleadings (Dkt. No. 23) be **GRANTED** and the complaint **DISMISSED IN ITS ENTIRETY WITHOUT PREJUDICE TO PLAINTIFF FILING AN AMENDED COMPLAINT CONSISTENT WITH THE DIRECTIONS IN THIS ORDER AND REPORT-RECOMMENDATION**, and it is

   **ORDERED**, that plaintiff's motion to supplement (Dkt. No. 28) is **DENIED WITHOUT PREJUDICE**, consistent with the directions in this Order and Report-

18

Recommendation.

      Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: December 29, 2006

_____
Hon. Gustave J. DiBianco
U.S. Magistrate Judge