**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

BAKHOSHEQ ALLAN,

                      Plaintiff,

      vs.                                               9:05-CV-1280
                                                                   (NAM/GJD)

R.K. WOODS, Superintendent, et al.,

                      Defendants.
_____

**APPEARANCES**                                           **OF COUNSEL:**

Bakhosheq Allan
04-A-4429
Attica Correctional Facility
Box 149
Attica, New York 14011
Plaintiff, *Pro Se*

Office of the New York State Attorney General      Charles J. Quackenbush, Esq.
The Capitol                                                        Asst. Attorney General
Albany, New York 12224

**Hon. Norman A. Mordue, Chief United States District Judge**

## MEMORANDUM DECISION and ORDER

      Plaintiff Bakhosheq Allan brings this civil rights action pursuant to 42 U.S.C. § 1983, alleging that defendants have violated his right to practice his religion pursuant to the First Amendment of the United States Constitution as well as under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc *et seq.* (Dkt. No. 36)(amended complaint). Plaintiff seeks a substantial amount of monetary relief.

      Presently before the court is defendants' second[1] motion for judgment on the pleadings

___

[1] Defendants' first motion for judgment on the pleadings was granted "conditionally." (Dkt. No. 33). Plaintiff was afforded the opportunity to file an amended complaint in order to avoid dismissal. *Id.* Plaintiff filed the amended complaint on March 30, 2007. (Dkt. No. 36). Supplemental exhibits to the amended complaint were filed on April 19, 2007. (Dkt. Nos. 40, 41). The motion presently pending before this court is defendants' second motion that is addressed to the amended complaint. (Dkt. No. 50).

pursuant to FED. R. CIV. P. 12(c). (Dkt. No. 50).  Plaintiff has responded in opposition to the motion. (Dkt. No. 62).  For the following reasons, this court agrees with defendants and will dismiss the amended complaint.

## DISCUSSION

**1.    Judgment on the Pleadings**

After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to FED. R. CIV. P. 12(c). *Maggette v. Dalsheim*, 709 F.2d 800, 801 (2d Cir. 1983) (citations omitted).  *See* FED. R. CIV. P. 12(b), 12(c) and 12(h)(2).  The motion for judgment on the pleadings is then treated according to the same standard as a motion under Rule 12(b)(6). *Id*.

A court may not dismiss an action pursuant to Rule 12(b)(6) unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994) (citing *inter alia Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The court must accept the material facts alleged in the complaint as true. *Id*. (citing *Cooper v. Pate,* 378 U.S. 546 (1964)(per curiam)).  In determining whether a complaint states a cause of action, great liberality is afforded to *pro se* litigants. *Platsky v. Central Intelligence Agency*, 953 F.2d 26, 28 (2d Cir. 1991)(citation omitted).

When considering a motion to dismiss for failure to state a claim, the court may consider the complaint, together with any documents attached as exhibits or incorporated by reference. *See Dangler v. New York City Off Track Betting Corp.*, 193 F.3d 130, 138 (2d Cir. 1998).  In this case, plaintiff has submitted "supplemental exhibits" in support of his complaint. (Dkt. Nos. 40, 41).  This court may, therefore, consider the facts contained in those exhibits.

**2.    Facts**

Plaintiff alleges that when he arrived at Upstate Correctional Facility on September 17, 2004, he was assigned to work in the mess hall. Amended Complaint (AC) at p.3.  Plaintiff states

2

that he informed defendants Fortin, Hutchins, and Haug that plaintiff was a Hebrew Israelite and could not work on Fridays and Saturdays. *Id.* Fridays and Saturdays are the Sabbath for the Hebrew Israelite faith. Plaintiff claims that initially, defendants Fortin and Hutchins told plaintiff that the work schedule would not be a problem, and that plaintiff's request would be accommodated. *Id.*

Plaintiff claims that on October 1, 2004, "plaintiff was denied all previous arrangements." *Id.* Plaintiff states that when he approached defendants Fortin and Hutchins to "reconfirm" the agreement, plaintiff was told that he would work one half day on October 1, 2004 so that he could prepare for the Sabbath, which began at sundown. However, plaintiff states that on October 1, 2004, defendant Fortin "reneged on the agreement." *Id.* Plaintiff states that he went to speak with defendant Haug, who was the Food Service Administrator, but defendant Haug told plaintiff that he did not care about plaintiff, that defendant Haug was a Christian, and he had to work on Sunday, so plaintiff would have to work on his Sabbath. *Id.*

Plaintiff states that he then spoke with defendant Sergeant Daniel King, who told plaintiff that the facility did not have sufficient information about his "way of life," and he gave plaintiff a direct order to report for work on the Sabbath or plaintiff would be "keep-locked and ticketed." AC at p.4. Plaintiff states that on the evening of October 1, 2004, he wrote to defendant Superintendent Woods and filed a grievance complaint about this matter. *Id.* Plaintiff hoped that he could remedy the situation before he had to report to work the next day. However, plaintiff states that he realized on October 2, 2004 that his letter and grievance were "ineffective" because plaintiff was told to report to the mess hall. *Id.* Plaintiff claims that he obeyed defendant King's order and reported to work on October 2, 2004, but that plaintiff was so distressed that he was unable to focus on his job, and he ultimately suffered an injury. *Id.* Plaintiff states that he went to the infirmary, where his injury was treated. *Id.*

Plaintiff claims that on October 15, 2004, he was afforded a hearing on his grievance, and

3

he was told that according to the Upstate Clergy, there was no information that plaintiff was not supposed to work on the Sabbath. Plaintiff appealed the denial of his grievance, and plaintiff states that he was informed in the October 20, 2004 Superintendent's Response, that the Hebrew Israelite religion was not "officially recognized" by the Department of Correctional Services. *Id.* However, plaintiff states that, contrary to the Superintendent's response, the Central Office Review Committee (CORC) agreed that Hebrew Israelite inmates should not have to work from sundown Friday to sundown on Saturday. AC at p.5. Plaintiff received the CORC decision on November 17, 2004. *Id.*

Plaintiff states that during the grievance hearing, he informed the Inmate Grievance Review Committee that he was going to file a lawsuit regarding this incident. *Id.* Plaintiff spends the rest of the amended complaint detailing incidents in which he believes that the defendants retaliated against him based on his statement that he was going to file a lawsuit. AC at pp.5-8. Plaintiff alleges that on October 27, 2004, defendant Falcon placed plaintiff in keep-lock for no legitimate reason. Plaintiff filed a grievance which was initially denied, but ultimately the CORC stated that "additional investigation" showed that plaintiff was erroneously placed in keep-lock from October 27, 2004 until October 31, 2004. *Id.* Plaintiff states that in his appeal to the Superintendent, plaintiff stated that he "presume[d] that the unjustified days of keeplock were an attempt of reprisal." AC at p.5.

The second act of alleged retaliation occurred on January 4, 2005, when plaintiff claims that C.O. McGraw "misappropriated" forty seven postage stamps, pens, and candy from plaintiff during a cell search. *Id.* Plaintiff states that he filed a grievance regarding this incident, however, it was determined that there was "no evidence" to substantiate the allegations." AC at p.6. The CORC affirmed this finding. *Id.*

Plaintiff claims that after he filed this civil action, defendants subjected plaintiff to "one final display of harassment." *Id.* Plaintiff alleges that on February 16, 2006, defendant Hall

4

sexually assaulted plaintiff during a pat-frisk by fondling and complimenting plaintiff on his testicles. AC at p.6. Plaintiff states that "after responding defensively" to defendant Halls actions, plaintiff was sent back to his housing unit, and defendant Hall filed a false incident report against plaintiff. *Id.* Plaintiff states that he knew from prior experience that the grievance program did "not serve as an adversary process against employees," thus, plaintiff complained about this incident directly to the Deputy Superintendent of Security. *Id.* The Amended Complaint discusses this incident and plaintiff's subsequent complaint about the incident at length. Plaintiff also appears to have mentioned the complaint against defendant Hall during the disciplinary hearing that resulted from the pat-frisk incident. Plaintiff claims that at the time of the Amended Complaint, further investigation was pending regarding plaintiff's claim of sexual assault.[2]

The Amended Complaint contains three causes of action. AC at pp.8-9. The first cause of action states that the defendants have violated RLUIPA by placing a substantial burden on the exercise of plaintiff's religious rights. AC at p.8. The second cause of action states that "collectively, the officers and administration" forced plaintiff to obey a direct order that violated plaintiff's First Amendment rights. AC at p.8. It appears that plaintiff is also attempting to raise "retaliation" in the second cause of action. *Id.* Finally, plaintiff's third cause of action appears to be a restatement of his First Amendment and retaliation claims. AC at p.9. Plaintiff claims that Upstate's failure to recognize the Hebrew Israelite faith results from an "official policy and custom." *Id.*

**3.    RLUIPA Claims**

RUILPA provides that

No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -

---

[2] Apparently plaintiff claims that he was also directed to file a complaint with the Inspector General regarding his allegations of sexual assault. AC at p.8.

>	(A) is in furtherance of a compelling governmental interest; and

>	(B) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a).  Under RLUIPA, the plaintiff bears the burden of showing that his religious exercise has been burdened and that the burden is substantial. *Marria v. Broaddus*, 200 F. Supp. 2d 280, 297 (S.D.N.Y. 2002)(citing 42 U.S.C. § 2000cc-2(b)).  The burden then shifts to the government to show that the burden furthers a compelling governmental interest *and* that it is the ***least restrictive*** means of achieving that interest. *Id.*  The act defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A).

A "substantial burden" is one that places "substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Singh v. Goord*, 05 Civ. 9680, 2007 U.S. Dist. LEXIS 78742, *15 (S.D.N.Y. Oct. 9, 2007)(citing *inter alia Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).  Inconvenience alone is insufficient to establish a substantial burden. *Id.* (citing *Westchester Day School v. Village of Mamaroneck*, 379 F. Supp. 2d 550, 557 (S.D.N.Y. 2005)).  Furthermore, the substantial evidence test presupposes that some inconveniences may be so minor that they do not amount to a violation. *See McEachin v. McGuinnis*, 357 F.3d 197, 203 n.6 (2d Cir. 2004)(discussing in a footnote the applicability of the "time-honored maxim '*de minimis non curat lex*'").  However, the court should not attempt to engage in resolving disputes as to whether a particular practice is "central" or "mandatory" to a particular religion in determining whether a burden was substantial. *See Ford v. McGinnis*, 352 F.3d 582, 593-94 (2d Cir. 2003) (discussing First Amendment protections).

In this case, for purposes of this motion, defendants ***do not dispute*** that plaintiff is a Hebrew Israelite, nor do the defendants dispute that plaintiff's Sabbath runs from sundown Friday

6

until sundown on Saturday. Defendants' Memorandum of Law at 5 (Dkt. No. 50).  Rather, defendants argue that although plaintiff may have been told to report to work on October 2, 2004 (a Saturday morning), the Food Service Administrator immediately thereafter decided to accommodate plaintiff's scheduling request. *Id.* at 7.

As noted by the defendants, other than reporting to work on Saturday October 2, 2004 for a short period of time, plaintiff was never again required to work on a day that he claimed as his Sabbath.  Plaintiff filed a grievance on October 1, 2004,  the day before he was supposed to report for work. *See* Dkt. No. 40 at p.1.  The response to plaintiff's grievance was dated October 15, 2004, but the response stated that as of ***October 4, 2004***, the Food Service Administrator gave plaintiff Fridays and Saturdays off. *Id.* at p.2.  The Food Service Administrator granted plaintiff's accommodation even before the grievance was investigated.  The only other statement made by the Inmate Grievance Review Committee (IGRC) was that plaintiff would have to show that his religion was "valid" and that he was not supposed to work on Fridays or Saturdays. *Id.*  Plaintiff does not allege that he was ever made to work on a Sabbath day after that.

The Superintendent affirmed the decision of the IGRC, stating that although the Hebrew Israelite religion was not "officially" recognized by the Department, plaintiff had been granted his accommodation as of October 4, 2004, and thus, the "Grievance [was] resolved." *Id*. at p.4.  In its review of plaintiff's grievance, the Central Office Review Committee (CORC) stated that "inmates whose religious designation is Hebrew Israelite should not work on the Sabbath, which is from sundown on Friday to sundown on Saturday." *Id.* at p.5.  The CORC further stated that "[t]his issue has the attention of the facility administration." *Id.*

The record shows that far from substantially burdening plaintiff's exercise of his religion, the defendants attempted to accommodate plaintiff even before they determined that his

7

statements regarding his inability to work on Fridays and Saturdays were confirmed. In plaintiff's response to defendants' motion, he states that he was never really given an "accommodation" in the mess-hall, rather, he was shifted to a job in which he did not have to work Fridays or Saturdays for the *rest of the time* that he was confined at Upstate. (Dkt. No. 62 at p.6).

First, plaintiff clearly concedes that he was never again was "forced" to work on his Sabbath. Even if plaintiff's assertion is true, the constitutional issue is whether plaintiff had to work on his Sabbath. Defendant's actions in allowing him to refrain from violating his religious beliefs did accommodate plaintiff's request, regardless of how defendants accomplished this "accommodation." At worst, plaintiff experienced an inconvenience or disruption of his religious practice that did not even last one entire work day.[3] Thus, plaintiff's RLUIPA claim is dismissed.

### 4. <u>Personal Involvement</u>

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and *respondeat superior* is an inappropriate theory of liability. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)(citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). In *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation, and thus be subject to individual liability.

---

[3] Because this court has found that there is no substantial burden, there is no need to reach the "least restrictive means" portion of the standard. The court does note that defendants argue that to the extent that they would have required plaintiff to provide documentation relative to his claim that Friday and Saturday were his Sabbath days, this action would have been the least restrictive means of furthering the compelling governmental interest in preventing the fabrication of a religious claim in order to manipulate his prison environment. Defendants' Memorandum of Law at 10. (Dkt. No. 50). The court makes no finding regarding this issue, particularly because the defendants apparently granted plaintiff's accommodation without the required documentation.

A supervisory official is said to have been personally involved if that official directly participated in the infraction. *Id*. A supervisory official is said to have been personally involved if, after learning of a violation through a report or appeal, he or she failed to remedy the wrong. *Id*. Personal involvement of a supervisory official is said to exist if he or she created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue. *Id*. Finally, a supervisory official may be personally involved if he or she were grossly negligent in managing subordinates who caused the unlawful condition or event. *Id*.

Before discussing plaintiff's section 1983 causes of action, the court must clarify what allegations are brought against which individual defendant because it is clear that some defendants had no involvement or relationship to plaintiff's religion claims, and some defendants had absolutely no involvement in plaintiff's retaliation claims. Additionally, plaintiff names Robert Woods, the Superintendent of Upstate Correctional Facility.

Beginning with defendant Woods, the court notes that defendant Woods's only involvement in plaintiff's religious issue was his October 20, 2004 review of plaintiff's grievance. In the review, defendant Woods states that the Hebrew Israelite religion was not officially recognized by the Department of Correctional Services and that plaintiff would have to provide documentation from an outside source regarding the policies and practices of the religion. (Dkt. No. 40 at 4). However, by the time of defendant Wood's review of the grievance, plaintiff had already been allowed to take Fridays and Saturdays off, so the grievance was "resolved," and there was nothing further for defendant Woods to do. *Id.* This review does not make defendant Woods "personally involved" in any religious issue since he took no action, nor did he affirm any adverse action taken against the assertion of plaintiff's religious rights.

To the extent that defendant Woods thereafter reviewed plaintiff's grievances regarding

9

other issues that plaintiff viewed as "retaliatory," there is absolutely nothing to show that defendant Woods had any idea that these later grievances were in any way related to the religious issue. Plaintiff's *appeal* of defendant Woods's affirmance of the erroneous keep-lock claim was the first and only time plaintiff stated that he believed the action was an "attempt of reprisal." (Dkt. No. 40 at p.8).

Although plaintiff states in a completely conclusory fashion that defendant Woods was responsible for some sort of "policy," whether a religion is "recognized" by the Department of Correctional Services is *not* defendant Woods's policy, and in any event, plaintiff was given his accommodation regardless of what the official "policy" stated. Thus, the amended complaint may be dismissed as against defendant Woods for lack of personal involvement.[4]

The only individuals that plaintiff associates with his religion claims are defendants Haug, Fortin, Hutchins, and King. Plaintiff does not allege that any of these defendants had any involvement in the allegedly retaliatory actions. The individuals that plaintiff associates with his retaliation claims are defendants Falcon (improper keep-lock); McGraw (misappropriation of property); and Hall (alleged sexual assault). Each of the allegations of retaliation is separate, and there is no indication that any of the defendants were aware of the other's alleged actions. None of the individuals against whom plaintiff alleges retaliation had any involvement in or authority over plaintiff's religious request.

Although in his response, plaintiff now alleges that the defendants somehow engaged in a "conspiracy," more than conclusory allegations are required to state a claim for conspiracy under section 1983. *See Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)(conclusory allegations are

---

[4] This is only one basis for dismissal as against defendant Woods since plaintiff does not state claims for relief on the merits in any event.

10

insufficient to state a claim for relief under section 1983).  In order to make out a conspiracy claim, plaintiff would have to show that there was an agreement between two or more state actors, to act together to inflict an unconstitutional injury upon plaintiff, and an overt act done in furtherance of that goal. *Parker v. City of New York*, 05 Civ. 1803, 2008 U.S. Dist. LEXIS 791, *25 (S.D.N.Y. Jan. 7, 2008)(citing *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). Plaintiff has made no such specific allegations.  In fact although the erroneous keep-lock occurred the same month as the religious request, the postage stamp incident took place on January 4, 2005, and the alleged sexual assault did not occur until more than one year later on February 6, 2006.  There is absolutely no relationship between these incidents.  Thus, any claims of "conspiracy" may be dismissed.

**5.     First Amendment**

Plaintiff  claims that defendants' actions violated his First Amendment rights.  It is well-settled that inmates have the right under the First and Fourteenth Amendments to freely exercise a chosen religion. *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)(citing *Pell v. Procunier*, 417 U.S. 817, 822 (1974)).  However this right is not limitless, and may be subject to restrictions relating to legitimate penological concerns. *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir.), *cert. denied*, 498 U.S. 951 (1990).  The analysis of a free exercise claim is governed by the framework set forth in *O'Lone v. Estate of Shabazz*, 482 U.S. 342 (1987) and *Turner v. Safely*, 482 U.S. 78, 84 (1987).  This framework is one of reasonableness and is less restrictive than ordinarily applied to the alleged infringements of fundamental constitutional rights. *Ford*, 352 F.3d at 588.

In *O'Lone*, the Supreme Court held that a regulation that burdens a protected right withstands a constitutional challenge if that regulation is reasonably related to legitimate

11

penological interests. 482 U.S. at 349 (quoting *Turner*, 482 U.S. at 89).  An individualized decision to deny an inmate the ability to engage in a religious exercise is analyzed under the same standard. *Salahuddin v. Goord*, 467 F.3d 263, 274 n.4 (2d Cir. 2006)(citations omitted).  In *Farid v. Smith*, 850 F.2d 917, 926 (2d Cir. 1988), the Second Circuit held that to assess a free exercise claim, the court must determine "(1) whether the practice asserted is religious in the person's scheme of beliefs and whether the belief is sincerely held; (2) whether the challenged practice of prison officials infringes upon the religious belief; and (3) whether the challenged practice of the prison officials furthers some legitimate penological interest."

The court must examine whether the challenged action has a legitimate, rational connection to the governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating that right; and the existence of alternative means of facilitating the exercise of that right that have only a *de minimis* adverse effect on the valid penological interests. *See King v. Bennett*, 2007 U.S. Dist. LEXIS 27702, *12-13 (W.D.N.Y.  March 30, 2007)(citing *Salahuddin*, 467 F.3d at 274). Finally, once prison officials state a legitimate penological interest to justify their actions, the burden shifts to plaintiffs to show that the defendants' concerns are "irrational." *Ford*, 352 F.3d at 595.

In this case, plaintiff is not challenging a regulation, rather, he is challenging defendants' actions in requiring him to report to work on the Sabbath.  Although plaintiff's third "cause of action" states that the defendants are liable because there was no "directive" regarding the Hebrew Israelite faith, the defendants named in this action do not promulgate directives.  Plaintiff then states that his First Amendment rights were violated by an Upstate Correctional Facility "policy or custom," but plaintiff never states what the "policy or custom" was.

12

As stated above, the fact that plaintiff had to work one half day on his Sabbath did not substantially burden the practice of his religion under RLUIPA. The same is true of plaintiff's First Amendment rights. The court assumes that plaintiff's belief is sincerely held and that working on Friday and Saturday would infringe on that belief. However, plaintiff only reported to work on *one* Saturday. Plaintiff was granted his accommodation as of October 4, 2004, ***two days after the Sabbath incident***. He was granted his accommodation even before his grievance was investigated, and he was not prevented from exercising his First Amendment rights. The fact that defendants may have investigated or verified plaintiff's allegations would certainly be related to the legitimate penological interest of maintaining order in the facility by making sure that inmates were not attempting to manipulate their prison environment by fabricating a religious need.[5] This court finds that defendants did not violate plaintiff's First Amendment rights.

Thus, plaintiff's First and Third causes of action, raising both First Amendment and RLUIPA claims may be dismissed.

**6.    Retaliation**

Retaliation for the exercise of a constitutional right is a separate claim from the plaintiff's substantive First Amendment or statutory RLUIPA claim. *See Graham v. Henderson*, 89 F.2d 75, 79 (2d Cir. 1996). Any action taken by defendants in retaliation for the exercise of a constitutional right, even if not unconstitutional in itself, states a viable constitutional claim. *Franco v. Kelly*, 854 F.2d 584, 588-90 (2d Cir. 1988). In order to establish a claim of retaliation for the exercise of a constitutional right, plaintiff must show first, that he engaged in constitutionally protected conduct, and second, that the conduct was a substantial motivating

---

[5] This is distinguished from requiring "documentation" of a religious requirement since it does not appear that defendants required plaintiff to produce such documentation.

13

factor for adverse action taken against him by defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)(citing *Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002); *Hendricks v. Coughlin*, 114 F.3d 390 (2d Cir. 1997)).  The court must keep in mind that claims of retaliation are "easily fabricated" and thus, plaintiffs must set forth non-conclusory allegations. *Id.* (citing *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)).

As stated above, plaintiff alleges various actions by different defendants that plaintiff claims constitute "retaliation."  It is unclear what constitutionally protected conduct plaintiff claims to have undertaken which resulted in the "retaliation."  In the amended complaint, plaintiff states that during the grievance hearing on October 15, 2004, plaintiff informed the IGRC that he was going to file a lawsuit over the religion issue. AC at p.5.  Then plaintiff states that because he informed the IGRC that he was going to file a lawsuit in the future, "plaintiff was then subjected to numerous [sic] and continuous harassment from various officers at Upstate C.F. prior to [plaintiff's] actual filing of the suit." *Id.*  Based on this statement, the court finds that plaintiff's alleged constitutionally protected conduct was telling the IGRC that he was going to file a lawsuit.  Plaintiff did not actually file this lawsuit until October 7, 2005, approximately ***one year*** after the incident. (Dkt. No. 1).

The first incident of alleged retaliation is that defendant Falcon erroneously placed plaintiff on keep-lock[6] status for four days between October 27, 2004 and October 31, 2004. AC at p.5).  Plaintiff filed a grievance, and it was ultimately determined by the CORC that the placement was in error. (Dkt. No. 40 at p.9).  Plaintiff did receive a misbehavior report on

---

[6] "Keeplock" is a form of disciplinary confinement where the inmate is confined to his own cell. *Gittens v. LeFevre*, 891 F.2d 38, 39 (2d Cir. 1989).

14

October 31, 2004 and was placed on keep-lock status that day. *Id.* Plaintiff states in the amended complaint and in the appeal of the Superintendent's decision on his grievance, that because of the "knowledge" that he was going to file a lawsuit, plaintiff "presumed" that the erroneous keep-lock was "an attempt of [sic] reprisal and that it was "the beginning of a foreseen harassment." There is absolutely no indication that defendant Falcon, who is alleged to have made this error, knew about plaintiff's plans to file a lawsuit the following year. Plaintiff's "presumption" that this error was actually retaliation for the exercise of a constitutional right by an individual who is not alleged to have been involved in the religion incident at all, is a completely conclusory allegation of retaliation.

The fact that plaintiff was planning on filing a lawsuit does not make every adverse action against him "in retaliation" for those plans. Plaintiff's next allegation of retaliation is that defendant McGraw "misappropriated" forty seven of plaintiff's postage stamps during a cell search on January 4, 2005, almost three months after plaintiff's grievance in which he allegedly announced that he would be filing a lawsuit.[7] There is absolutely ***no connection*** between this alleged conduct and knowledge of plaintiff's religious grievance or plaintiff's intent to file a lawsuit regarding his religion claims.

Plaintiff's final allegation of retaliation involves the alleged "unwarranted and offensive display of sexual assault." AC at p.6. This alleged action occurred after plaintiff filed his amended complaint. Plaintiff alleges that on February 16, 2006, defendant E. Hall fondled plaintiff during a pat frisk and complemented plaintiff's genitals. *Id.* The original complaint in this action was filed on October 7, 2005. Again, plaintiff cites no basis for this court to find that

---

[7] The court would point out that the contraband receipt for the cell search indicates that defendant McGraw seized the items, including "pens" and "stamps" as "excess state property." (Dkt. No. 40 at p.12).

15

defendant Hall knew about the plaintiff's religious claim, grievance, or lawsuit.  Plaintiff spends a great deal of time discussing his attempts to complain about this alleged action by defendant Hall, but *no part* of this discussion relates to how the action would be in retaliation for plaintiff's lawsuit. AC at pp.6-8.[8]  Thus, plaintiff has failed to state a claim for retaliation based on the three isolated and unrelated incidents that he cites.

**7.      Dismissal**

The court is well aware that generally, a district court should not dismiss a pro se complaint on the pleadings without granting leave to amend *at least once* when a liberal reading of the complaint gives any indication that a valid complaint may be stated. *Cuoco v. Moritsugo*, 222 F.3d 99, 112 (2d Cir. 2000).  In this case, however, this court has already given plaintiff a chance to amend his complaint to state a claim.  In a Report-Recommendation, dated December 29, 2006, Magistrate Judge Gustave Di Bianco recommended dismissing plaintiff's original complaint on the pleadings as a result of defendants' motion pursuant to FED. R. CIV. P. 12(c). (Dkt. No. 31).  Magistrate Judge Di Bianco found that plaintiff did not state claims under RLUIPA or the First Amendment (religion and retaliation). *Id.*  The recommendation was for dismissal without prejudice so that plaintiff could have the opportunity to amend his complaint.

On February 9, 2007, this court agreed with Magistrate Judge Di Bianco's report, but

---

[8] To the extent that the complaint could be interpreted as attempting to make a separate claim of "sexual assault" against defendant Hall, plaintiff's allegations would fail to state a claim.  While allegations of sexual abuse may in some circumstances violate the Eighth Amendment, isolated incidents of harassment, involving verbal harassment and touching are not severe enough to be "objectively, sufficiently serious." *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997).  The plaintiff in *Boddie* was also claiming an Eighth Amendment violation based upon allegations of sexual abuse. *Id.*  The court held that the "isolated episodes of harassment and touching alleged by Boddie are despicable and, if true, they may potentially be the basis of state tort actions.  But they do not involve a harm of federal constitutional proportions ... ." *Id.*
   Even assuming that defendant Hall did fondle plaintiff inappropriately during a pat frisk and did complement his genitals, plaintiff would not have stated a separate constitutional claim against defendant Hall.

16

found it unnecessary to dismiss the case. (Dkt. No. 33).  Thus, rather than dismiss without prejudice, the court simply ordered plaintiff to file an amended complaint, consistent with the findings in the Magistrate Judge's report.[9] (Dkt. No. 33 at p.4).  Plaintiff filed the amended complaint that is the subject of this motion for judgment on the pleadings. (Dkt. No. 36, 40, 41). Plaintiff has been given his one opportunity to amend in order to state a claim and has not been able to do so.  Thus, this court may dismiss this action with prejudice.

**WHEREFORE**, based on the findings above, it is

**ORDERED** that defendants' motion for judgment on the pleadings (Dkt. No. 50) is **GRANTED**, and the complaint is **DISMISSED WITH PREJUDICE.**

**IT IS SO ORDERED.**

Dated:  March 17, 2008

_____
Norman A. Mordue
Chief United States District Court Judge

---

[9] The court did state that if plaintiff failed to file an amended complaint, the case would be dismissed. (Dkt. No. 33 at p.4).